# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2020, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of M.O. (Minor Child)<br><br>    and<br><br>F.O. (Father),<br>*Appellant-Respondent,*<br><br>    v.<br><br>The Indiana Department of Child Services,<br>*Appellee-Petitioner.* | August 12, 2020<br><br>Court of Appeals Case No. 20A-JT-211<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark A. Jones, Judge<br><br>The Honorable Peter P. Haughan, Magistrate<br><br>Trial Court Cause No. 49D15-1905-JT-484 |

**Bailey, Judge.**

# Case Summary

[1] F.O. ("Father") appeals the termination of his parental rights to his child, M.O. ("Child"). Father presents the sole issue of whether the termination order is supported by sufficient evidence. We affirm.

# Facts and Procedural History

[2] On March 31, 2011, Child was born to Father and S.C. ("Mother").[1] Child is Father's only child, but Mother eventually had seven children. When Mother gave birth to her youngest in June of 2016, she and the child tested positive for cocaine. On June 10, 2016, the Marion County Department of Child Services ("the DCS") alleged that Child was a Child in Need of Services ("CHINS"). The DCS alleged that Mother was not providing a safe living environment free of substance abuse and that Father was unable to provide a custodial home or ensure Child's safety in Mother's custody. Child was removed from Mother's home.

[3] In July of 2016, Father tested positive for cocaine. The following month, he pled guilty to a misdemeanor offense of Operating While Intoxicated. On September 1, 2016, the CHINS court conducted a fact-finding hearing and Mother admitted that Child was a CHINS. On September 29, 2016, Father waived a fact-finding hearing as to him, and Child was adjudicated a CHINS.

---

[1] Mother is not an active party to this appeal.

Father was ordered to complete a substance abuse assessment, follow any recommendations as a result of that assessment, complete a program called Father's Engagement, and provide random drug screens.

[4] At a periodic review hearing conducted on January 15, 2017, the CHINS court found that Father was participating in some services. By the next review hearing, Father was facing a notice of probation violation. In June of 2017, the CHINS court conducted a hearing and found that neither parent was in substance abuse treatment. That same month, Father was ordered to serve sixty days for a probation violation.

[5] On December 23, 2017, Father was charged with a misdemeanor offense of Carrying a Handgun Without a License. On December 28, 2017, the CHINS court conducted a hearing and found that Father had not provided a drug screen since July of 2016 in the CHINS matter.[2] The plan for Child was changed from reunification to adoption. On April 9, 2018, Father pled guilty to the handgun charge.

[6] On July 12, 2018, the CHINS court changed the plan for adoption back to reunification, after hearing evidence and argument that Father was visiting with Child, looking for housing, and meeting with service providers. At a hearing conducted on September 13, 2018, the CHINS court was advised that Father was working and was on a housing wait list, but he was not providing drug

---

[2] Father may have been providing drug screens as part of his probation.

screens. On November 8, 2018, Father was sentenced to 180 days on home detention, as a result of probation violations. On April 25, 2019, the CHINS court conducted a permanency hearing and changed the plan back to adoption. By that time, Father was living with his grandmother and uncle in a senior living apartment but was not on the lease. He had not provided a drug screen since January of 2019.

[7] On May 6, 2019, the DCS petitioned to terminate Mother's and Father's parental rights as to Child. Mother consented to termination of her rights. In June of 2019, Father was administered a drug screen as part of his probationary proceedings, and he tested positive for opiates, cocaine, and THC.

[8] On October 2 and 9, 2019, the trial court conducted a hearing on the termination petition. Father testified that he was employed and brought home $530.00 weekly. He was residing with his disabled grandmother, as a permitted caregiver, but was not a party to the lease. According to Father, it had been "months since he used" illegal substances. (Tr. Vol. II, pg. 11.) Service providers testified that Father had regularly visited with Child and there was a parent-child bond; however, after three years, Father had not provided proof of sobriety or located housing where Child could reside.

[9] On January 7, 2020, the trial court issued its findings of fact, conclusions thereon, and order terminating Father's parental rights. He now appeals.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143,

147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A)   that one (1) of the following is true:
>
> > (i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> >
> > (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)   that one (1) of the following is true:
>
> > (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

## Analysis

[13] As to continuation of the parent-child relationship posing a threat to Child, the trial court found there was a threat from Father's failure to maintain sobriety. Father contends that the DCS failed to show that he presents a threat to Child. He points to testimony from visitation supervisor Daidjina Appley ("Appley") and Father's Engagement counselor Philip Sowder ("Sowder") suggesting that Father interacted appropriately with Child and that Father and Child were bonded.

[14] Father had not been inclined to agree with caseworkers that his drug use, even if intermittent, posed a threat to Child. But Father does not challenge the trial court's parallel finding of a reasonable probability that the reasons for placement outside the home—which were a lack of appropriate housing and verification of parental sobriety—could not be remedied. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct.

App. 1999). In determining whether the evidence supports the trial court's conclusion that Father was unlikely to remedy the reasons for removal or continued placement, we engage in a two-step analysis. *F.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* The court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted).

[15] Over the years, several family case managers had been assigned to Child's case. Each testified at the termination hearing that the reasons for Child's continued placement were the lack of stable housing and lack of verification of Father's sobriety. They uniformly testified that contact with Father had been sporadic. The DCS records indicated that Father had not completed a substance abuse assessment. Family case manager Vivian Todd-Scott testified that "for the most part, Father was not screening." (Tr. Vol. II, pg. 222.)

[16] Sowder testified that he worked with Father with the goals of Father obtaining employment, transportation and independent housing suitable for Child. Although Father was generally employed and had secured a vehicle, Father did

not obtain the requisite housing. Sowder ceased providing services to Father because he "had gone as far as he could go" and there was "nothing more to provide" as far as assistance. (Tr. Vol. II, pg. 187.) Appley testified that she would recommend Child's placement with Father "in a different environment." (*Id.* at 132.) But three years passed without Father finding a place where he and Child could live together.

[17] Father contends that his alleged non-compliance with services is akin to that of the Father in *In re K.T.*, 137 N.E.3d 317 (Ind. Ct. App. 2019). There, the child had been removed from the mother's care and this Court's review revealed "no evidence in the record showing reasons for Child's initial or continued placement away from Father." *Id.* at 328. The father's lack of full compliance with services did not support termination of his parental rights, as explained:

> Perhaps because of this dearth of evidence, the trial court did not make any findings related to Father's alleged issues with anger and alcohol or his alleged criminal history. Rather, in its order terminating Father's parental rights, the trial court relied solely upon evidence of Father's failure to fully participate in and complete services. And on review of a TPR order, "our analysis is centered on the findings of fact and conclusions of law determined by the trial court." *In re V.A.*, 51 N.E.3d at 1144.

> The evidence supports the trial court's conclusions that Father failed to fully participate in and complete court-ordered services such as individual therapy and failed to participate in some scheduled visitations. However, Father's failure to fully participate in services, alone, cannot sustain the TPR order. A termination of parental rights must be based on some showing of parental unfitness, and that showing "must be established on the

basis of individualized proof." *Tipton v. Marion Cty. Dep't of Public Welfare*, 629 N.E.2d 1262, 1268 (Ind. Ct. App. 1994). Although a trial court may consider the services offered by DCS and Father's response to those services as evidence regarding whether problematic conditions will be remedied, e.g., *A.D.S. v Ind. Dep't of Child Serv.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*, there must be some proof of the underlying problematic conditions for which services were required to begin with.

*Id.* Here, by contrast, the termination decision does not stem solely from a failure to cooperate with services. Father's ability to parent has been affected by consequences for criminal conduct, such as incarceration and house arrest, and by his drug use and non-compliance with treatment services. Unlike *K.T.,* here the DCS did not fail in its burden of proof on the element of unremedied conditions or threat.

[18] Father also contends that the DCS did not present clear and convincing evidence that termination is in Child's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. Child's Guardian ad Litem ("the GAL") testified that Child had been placed in the same foster home for three years. The foster parents, who had adopted two of Child's siblings, also wished to adopt Child. The GAL opined that Child was bonded with her siblings and foster family. Father is not in a position to provide stability for Child.

According to Father, the best solution for Child would be to continue her living arrangement with her siblings and foster parents but also permit her relationship with Father to continue. Our Indiana Supreme Court observed: "Children's vital interests in both preservation and permanency are inherently at odds in TPR cases." *In re E.M.*, 4 N.E.3d 636, 649 (Ind. 2014). Continuing both relationships is not an indefinite option. *See id.* The DCS did not fail in its burden of proof as to the element of Child's best interests.

# Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

Vaidik, J., and Baker, S.J., concur.